UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DARREN W. BURGESS,

                Plaintiff,

    v.

BUDDY'S NORTHWEST LLC, et al.,

                Defendants.

CASE NO. C15-5785 BHS

ORDER GRANTING
DEFENDANTS' MOTION TO
COMPEL ARBITRATION AND
DENYING MOTION FOR
SUMMARY JUDGMENT AS
MOOT

       This matter comes before the Court on the motion to compel arbitration (Dkt. 82) of Buddy's Northwest, LLC ("Buddy's"), Buddy's Franchising and Licensing, LLC (also "Buddy's"), and David Epright ("Epright") (collectively "Defendants"). Also pending before the Court is Defendants' motion for summary judgment. Dkt. 34. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby (1) grants the motion to compel arbitration and (2) denies the motion for summary judgment as moot.

## I. BACKGROUND

       On August 26, 2013, Plaintiff Darren Burgess ("Plaintiff") and other employees signed several forms as part of their employment with Buddy's, as opposed to Quality

1  Rentals, including a "Mutual Agreement to Arbitrate Claims." Dkts. 17-1, 25. The last

2  page of the agreement is marked with the printed and signed name of "Darren W.

3  Burgess" and the date of "8/26/13." Dkt. 17-1.

4      On September 29, 2015, apparently unaware that he had executed the agreement,

5  Plaintiff filed his complaint in Pierce County Superior Court. Dkt. 1-2. Plaintiff alleges

6  that Defendants discriminated against him in violation of the Washington Law Against

7  Discrimination, Chapter 49.60 RCW. *Id.* On October 29, 2015, Defendants removed the

8  action to federal court. Dkts. 1, 2.

9      Since the action was commenced, Defendants have conducted "a half day of one

10 deposition" and have made a discovery request comprised of interrogatories and requests

11 for production. Dkts. 13, 16. Defendants also previously filed a motion to compel

12 discovery, but later withdrew that motion. Dkts. 12, 14. Plaintiff has not propounded any

13 discovery to Defendants. Dkt. 16.

14     On October 3, 2016, Defendants filed the instant motion to compel arbitration.

15 Dkt. 15. On October 24, 2016, Plaintiff responded. Dkt. 24. On October 28, 2016,

16 Defendants replied. Dkt. 27.

17     On November 29, 2016, Defendants also filed a motion for summary judgment

18 noted on the Court's docket calendar for consideration on December 23, 2016. Dkt. 34.

19 On December 19, 2016, Plaintiff responded. Dkt. 38. Defendants have not yet replied.

20                          **II. DISCUSSION**

21     Defendants move to compel arbitration pursuant to the arbitration agreement

22 executed by Plaintiff on August 26, 2013. Dkts. 15, 17-1. In deciding the motion, the

1  Court must consider (1) whether the parties' dispute falls within the scope of the

2  arbitration agreement and (2) whether the agreement is valid and enforceable.

3  **A.      Scope of Arbitration Agreement**

4          In determining whether to compel arbitration, the Court must first consider

5  whether the parties' dispute falls within the scope of the arbitration agreement. *Mitsubishi*

6  *Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Plaintiff does

7  not contend that the subject matter of his WLAD claim falls outside the scope of the

8  agreement. Indeed, the agreement covers all claims "arising out of [his] application for

9  employment, employment, or the termination of [his] employment that the Company may

10  have against [him] or that [he] may have against the [Company]." Dkt. 17-1 at 1.

11          However, Plaintiff does argue that the scope of agreement does not encompass his

12  claims against Epright. Dkt. 24 at 7–9. Under well-established principles of contract law,

13  "nonsignatories can also seek to enforce arbitration agreements as third party

14  beneficiaries." *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 811 n.22 (2009).

15  The agreement provides that it applies to claims against "(1) the Company, [and] (2) its

16  officers, directors, employees, or agents in their capacity as such or otherwise . . . ." Dkt.

17  17-1 at 1. Because Epright was acting "in the scope of his employment . . . within

18  plaintiffs' supervisory chain of command" when he allegedly engaged in the acts that

19  gave rise to Plaintiff's claims, Dkt. 1-2 at 2, the agreement plainly encompasses

20  Plaintiff's claims against Epright. Accordingly, while Epright is not a signatory to the

21  agreement, he may nonetheless enforce the arbitration agreement as a third party

22  beneficiary.

**B.     Validity of Agreement**

Once a court establishes that a claim is within the scope of an arbitration agreement, the agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "State law may supply grounds for declaring a contract unenforceable, including state unconscionability law." *Simpson v. Inter-Con Sec. Sys., Inc.*, C12-1955RAJ, 2013 WL 1966145, at *2 (W.D. Wash. May 10, 2013) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996)). Plaintiff contends that the agreement is invalid or unenforceable because (1) it lacked mutual assent, and (2) it was unconscionable.

**1.     Mutual Assent**

Plaintiff claims that the agreement is invalid because there was no mutual assent. To support his position, Plaintiff argues that he "did not understand the meaning or reason for the agreement, defendants did not explain or discuss the agreement" and "there is no signature, execution, or acknowledgement on behalf of defendants." Dkt. 24 at 5.

First, the Court notes that "[o]ne who accepts a written contract is conclusively presumed to know its contents and to assent to them . . . . Ignorance of the contents of a contract expressed in a written instrument does not ordinarily affect the liability of one who signs it or who accepts it otherwise than by signing it." *Tjart v. Smith Barney, Inc.*, 107 Wn. App. 885, 897 (2001). *See also Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc.*, 96 Wn.2d 939, 944 (1982) (a party's signature on a written agreement is an objective manifestation of the party's intent to be bound by the contract). Accordingly, Plaintiff's cursory argument that he did not understand the agreement does

not invalidate his apparent assent. The arbitration agreement in this case is very clear. It is titled "**MUTUAL AGREEMENT TO ARBITRATE CLAIMS**." Dkt. 17-1. The terms therein are plainly set out. Plaintiff was clearly afforded an opportunity to review each page of the document as each page was initialed by Plaintiff. *Id.* Accordingly, by producing the signed agreement, Defendants have adequately shown Plaintiff's assent. Plaintiff has failed to rebut the presumption of assent that his signature creates.

Next, the Court observes that mutual assent does not require that a written agreement be executed by all the parties involved. "Mutual assent generally takes the form of an offer and an acceptance." *Yakima Cty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 388 (1993). Washington courts have routinely rejected the argument that a written agreement lacked mutual consent if not signed by the party seeking to enforce it. *See, e.g.*, *Shelcon Const. Grp., LLC v. Haymond*, 187 Wn. App. 878, 894–95 (2015) ("[A] valid written agreement can exist without one party's signature . . . In the analogous context of the statute of frauds, some contracts must bear the signature *of the person against whom enforcement is sought*.") (emphasis added). Here, just as in *Fire Prot. Dist. No. 12*, 122 Wn.2d at 388, the written agreement itself constituted a clear offer, as it bears Buddy's logo and refers to Buddy's as a party throughout. *Id.* In turn, the Plaintiff's signature indicates his acceptance of the offer. *Retail Clerks*, 96 Wn.2d at 944.

2. **Unconscionability**

Plaintiff does not expressly claim that the arbitration agreement is unconscionable. However, Plaintiff implies unconscionability by arguing that he does not remember

1  signing the agreement,[1] that he did not understand its terms, and that he was offered only

2  a single day in which to sign. Dkt. 24 at 5. Washington recognizes two types of

3  unconscionability for invalidating arbitration agreements: procedural and substantive.

4  *McKee v. AT & T Corp.*, 164 Wn.2d 372, 396 (2008). Procedural unconscionability refers

5  "to impropriety during the formation of the contract," while substantive

6  unconscionability involves "cases where a clause or term in the contract is alleged to be

7  one-sided or overly harsh." *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258,

8  1262 (1995). Plaintiff does not argue that the content of the arbitration agreement is

9  unfair. Instead, Plaintiff implies procedural unconscionability by complaining about the

10  circumstances surrounding his acceptance of the agreement. Dkt. 24 at 5.

11  Procedural unconscionability is described as "the lack of a meaningful choice"

12  under the entirety of the circumstances surrounding the transaction, including: (1) the

13  manner in which the contract was entered, (2) whether the parties had a reasonable

14  opportunity to understand the terms of the contract, and (3) whether the terms were

15  hidden in a maze of fine print. *Tjart v. Smith Barney, Inc.*, 107 Wn. App. 885, 898

16  (2001). "The burden of demonstrating that an arbitration agreement is not enforceable is

17  on the party opposing the arbitration." *Romney v. Franciscan Med. Grp.*, 186 Wn. App.

18  728, 735 (2015), *review denied*, 184 Wn.2d 1004.

19  _____

20      [1] While Plaintiff's brief states that he does not recall signing an arbitration agreement,

21  this does not cast any doubt on whether his signature and repeated initials on the arbitration agreement are authentic. *See* Dkt. 25. Indeed, in his declaration, Plaintiff merely states that he

22  "does not remember all the forms [he was] required to sign," although he does recall signing numerous documents on the same date as the arbitration agreement.

> At minimum, an employee who asserts an arbitration agreement is procedurally unconscionable must show some evidence that the employer refused to respond to her questions or concerns, placed undue pressure on her to sign the agreement without providing her with a reasonable opportunity to consider its terms, and/or that the terms of the agreement were set forth in such a way that an average person could not understand them.

*Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 306–07 (2004).

Plaintiff has failed to satisfy this burden. He has made no allegations that his employer refused to answer questions or discuss the agreement. Instead, he merely states that his employer did not volunteer "that [he] was signing any rights away" or "that [he] had the right to have it reviewed with an attorney." Dkt. 25 at 2. Nor does Plaintiff contend that the agreement sets forth its terms in such a way that an average person could not understand them. Although the arbitration agreement was included among other documents that needed to be signed that day, the agreement was in no way hidden in a "maze of fine print." Moreover, the agreement's terms are set out in a clear and understandable manner.

Plaintiff's argument of procedural unconscionability rests entirely on his assertion that he was "just told that all of these forms had to be signed on that day." *Id*. The fact that Defendant was given only one day to inspect the agreement is concerning. Nonetheless, under the entirety of the circumstances, the Court finds it is insufficient to support a finding that defendants exerted any "undue pressure" on Plaintiff. As stated above, Plaintiff had time to review the agreement's contents, and he initialed each page. Dkt. 17-1. Where Plaintiff ultimately signed the agreement, it states in bold and capitalized font:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT . . . I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.**

*Id.* at 4.

Under the totality of these circumstances, the fact that Plaintiff had only a single day to accept or reject the offer is insufficient to establish unconscionability. Because Plaintiff does not otherwise suggest that he was deprived of a meaningful choice in accepting or rejecting the agreement, the Court finds that Plaintiff has failed to satisfy his burden in establishing that the agreement is unconscionable.

**C.      Waiver**

Plaintiff also argues that Defendants have waived the arbitration agreement. "[A] party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). "[A]ny party arguing waiver of arbitration bears a heavy burden of proof." *Id.* Indeed, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922–23 (9th Cir. 2011) (quotation omitted).

1    Plaintiff claims that Defendants have waived their right to arbitration by removing

2    this case to federal court, filing a responsive pleading, and conducting part of a

3    deposition. Plaintiff cites no authority for the premise that removal or responsive

4    pleading constitutes a waiver of the right to arbitration. To the contrary, there is

5    substantial authority to suggest that the "exercise of [Defendants'] right to remove the

6    state-court action to federal court and filing an answer with counterclaims (without

7    litigating them) is not sufficiently inconsistent with their right to arbitrate." *Madrigal v.*

8    *New Cingular Wireless Servs., Inc.*, 09-CV-00033-OWW-SMS, 2009 WL 2513478, at

9    *13 (E.D. Cal. Aug. 17, 2009) (collecting cases). *See also Olson v. Harland Clarke*

10   *Corp.*, C11-5585 BHS, 2012 WL 1821390, at *2 (W.D. Wash. May 18, 2012).

11   Additionally, while it appears that the parties have conducted a portion of a single

12   deposition, this did not exceed the Defendants' contractual discovery rights set forth in

13   the arbitration agreement. *See* Dkt. 17-1 at 2 ("Each party shall have the right to take the

14   deposition of one individual and any expert witness designated by another party.").

15   Accordingly, the Court finds that Plaintiff has failed to show that Defendants have acted

16   so inconsistently with their right to arbitrate as to constitute a waiver of arbitrability.

17       An assessment of Plaintiff's waiver defense could stop here, but the Court finds it

18   prudent to explain that Plaintiff has also failed to show prejudice. Plaintiff's argument on

19   prejudice is based solely on Defendants' delay in seeking arbitration. However, Plaintiff

20   "could have requested arbitration at the outset avoiding these detriments altogether."

21   *Olson*, 2012 WL 1821390 at *2. *See also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114,

22   1126 (9th Cir. 2008) ("It is not self-evident . . . costs and delay should be attributed to

ORDER - 9

1   [the Defendant] rather than to [the plaintiff] himself for not properly filing his claim with

2   the AAA."). Moreover, it appears that—unlike the question of prejudice and expense

3   arising from protracted litigation—such an argument of waiver by delay "is a matter

4   presumptively for the arbitrator, not for the judge." *Howsam v. Dean Witter Reynolds,*

5   *Inc.*, 537 U.S. 79, 85 (2002). *See also River House Dev. Inc. v. Integrus Architecture,*

6   *P.S.*, 167 Wn. App. 221, 232 (2012) ("Following the U.S. Supreme Court's decision in

7   *Howsam* . . . courts have increasingly referred the issue of waiver by delay to the

8   arbitrator."). Therefore, the Court finds that Plaintiff has not been prejudiced by the delay

9   in compelling arbitration, nor have Defendants waived their right to arbitration.

10   **D.      Motion for Summary Judgment**

11         The Court, having granted the motion to compel arbitration, need no longer

12   address Defendants' motion for summary judgment. The motion is denied as moot.

13                                      **III. ORDER**

14         Therefore, it is hereby **ORDERED** that the motion to compel arbitration (Dkt. 15)

15   is **GRANTED**. The motion for summary judgment (Dkt. 34) is **DENIED** as moot. This

16   case shall be stayed and administratively closed.

17         Dated this 21st day of December, 2016.

18

19   _____

20   BENJAMIN H. SETTLE
     United States District Judge

21

22